Alice T. KIERNAN, Plaintiff–Appellant,

v.

AGENCY RENT A CAR, INC.,
Defendant–Appellee.

No. 90–2370.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 4, 1991.

Decided March 20, 1991.

Amended by Order May 6, 1991.

Amended by Order June 14, 1991.

Warner Franklin Young, argued (David J. Fudala, on brief), Hall, Markle, Sickels & Fudala, P.C., Fairfax, Va., for plaintiff-appellant.

John Anthony Conrad, argued (Alan B. Gnapp, on brief), Sands, Anderson, Marks & Miller, Richmond, Va., for defendant-appellee.

Before PHILLIPS and CHAPMAN, Circuit Judges, and MULLEN, District Judge for the Western District of North Carolina, sitting by designation.

PER CURIAM:

Alice Kiernan brought this diversity action against Agency Rent–A–Car seeking a declaratory judgment that she was entitled to recover from Agency as a duly certified self-insurer for injuries she suffered when

the rental car in which she was a passenger collided with another car. The district court held that under Virginia insurance law, the law applicable to this case, Kiernan could recover no more than $25,000, and that consequently she failed to allege an amount in controversy exceeding $50,-000, as required by 28 U.S.C.A. § 1332 (West Supp.1990). Accordingly, the district court dismissed the action for want of subject matter jurisdiction. Finding no error, we affirm.

## I

Kiernan was a passenger in a rental car driven by Jennifer Maillet, who had leased the car from Agency. It is not disputed that the accident in which she suffered injuries was due to the negligence of the driver of the other car and that this driver was underinsured. Kiernan filed this declaratory judgment action against Agency after having obtained a $300,000 consent judgment in Maryland state court against the driver of the other car, Velma Adams. Adams' carrier paid the full extent of her liability coverage, $38,500; the uninsured coverage carried by Maillet, the driver of the rental car, paid Kiernan another $10,-000. That left Kiernan with a $251,500 balance that she sought in this action to collect from Agency as a self-insurer under relevant provisions of Virginia insurance law.

Under that law, entities such as Agency, which rent for hire (without driver) more than twenty cars, are required to rent only "insured motor vehicles." Va.Code Ann. § 46.1-14(d) (Michie 1980 Repl.Vol.).[1] "Insured motor vehicle" is defined as one subject to an insurance policy, or, as is relevant here, one in which the owner has been certified as a self-insurer. *Id.* § 46.1-167.2. It is agreed that Agency is a certified self-insurer, pursuant to § 46.1-395. That section provides:

**Certificate of self-insurance exempts from chapter.—**

(b) The Commissioner [of Department of Transportation] may, in his discretion and upon the application of such a person [who operates more than twenty vehicles], issue a certificate of self-insurance when he is reasonably satisfied that (1) such person is possessed and will continue to be possessed of financial ability to respond to a judgment as hereinbefore described, obtained against such person, arising out of the ownership, maintenance, use or operation of any such person's motor vehicles and (2) that such certificate provides for protection against the uninsured motorist to the extent required by § 38.1-381 of this Code....

*Id.* § 46.1-395.

It is undisputed that the rental agreement here in issue provided liability coverage in the minimum amount allowed by Virginia law, $25,000 per person and $50,-000 per occurrence. *Id.* § 46.1-1(8) (Michie 1985 Cum.Supp.).

Agency moved under Fed.R.Civ.P. 12(b)(1) for dismissal for lack of subject matter jurisdiction. It contended that as a matter of law the jurisdictional amount of $50,000 was not recoverable because under Virginia law Agency had no liability to Kiernan as a self-insurer, or, alternatively, that if it had any liability it was limited by terms of the rental agreement to $25,000.

The district court granted the motion on the basis that, as Agency contended, if it had any liability for underinsurance protection, it was limited under the rental agreement's terms to $25,000.

This appeal followed.

## II

### A

At the outset, we reject two of Agency's arguments that it had no liability to Kiernan under relevant provisions of Virginia insurance law.

■ The first is that the basic self-insurance provision, § 46.1-395, simply defines

---

**1.** All Virginia Code references, unless otherwise noted, are to the 1980 version of the statute, which is applicable to the instant action but which subsequently has been amended and renumbered.

obligations of the Commissioner of the Department of Transportation to issue certificates of self insurance under certain conditions, and does not purport directly to impose self-insurance liability on any entity such as Agency. This is a specious argument. Though the statute may be awkwardly phrased, its unmistakable intent is to make of any entity to whom a certificate is issued a self-insurer in accordance with other provisions relevant to that status.

■ The second is that if this provision imposes any obligation on self-insureds, the obligation runs only to providing uninsured, not underinsured, motorist coverage. This is at odds with controlling Virginia law, which in line with the general trend, treats the two as one. *See Nationwide Mut. Ins. Co. v. Scott*, 234 Va. 573, 363 S.E.2d 703, 704–05 (1988) ("uninsured motorist" includes "underinsured" as well).

Neither of these arguments against any coverage succeeds.

### B

We turn then to Kiernan's contentions that Agency's potential liability under relevant Virginia insurance law is in an amount exceeding $50,000, so that subject matter jurisdiction exists.

Two statutory sections are invoked.

■ Section 46.1–167 provides that each certified selfinsurer must be "possessed and will continue to be possessed of financial ability to respond to a judgment, as hereinbefore described, obtained against such person...." Kiernan tries to stretch the definition of judgment—"*any* judgment ... arising out of a motor vehicle accident," *id.*—to reach the present case. This effort fails, however, because the expansive language in this definition is fenced in by § 46.1–395(b)(1), which only calls for financial accountability for "any judgment [as defined above] *obtained against* [a certified self-insurer]." Here it is undisputed

that Kiernan has no judgment against Agency. She does have an unsatisfied judgment arising out of an auto accident involving an Agency car, but no judgment was entered against Agency, since they either were dropped by summary judgment or were never named in the Maryland suit. Thus, lacking a judgment "against Agency," Kiernan cannot avail herself of the provisions of § 46.1–395(b)(1).

■ The second provision on which plaintiff relies for coverage is § 46.1–395(b)(2). That provision does not include a requirement of a judgment but stipulates that each certificate of self-insurance must "provide[ ] for protection against the uninsured motorist *to the extent required by § 38.1–381 of this Code....*" *Id.* (emphasis supplied). Kiernan contends that this provision imposes on Agency a self-insurer obligation to provide coverage against uninsured/underinsured motorists to the maximum extent required by law—and the maximum extent, Kiernan asserts, is without limit.

We disagree. The relevant provisions indicate that the self-insurer's obligation can be limited, and that in this case the limit is $25,000.[2] The critical language for our purposes is found in § 38.1–381(b) which provides in relevant part:

> [N]o such policy [of insurance] relating to ownership, maintenance or use of a motor vehicle shall be so issued or delivered unless it contains an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle, *within limits which ... after January 1, 1983, shall be equal to, but not exceeding, the limits of the liability insurance afforded by such policy,* unless the insured rejects such additional uninsured motorist insurance coverage by notifying the insurer....[3]

---

**2.** It should be noted that § 38.1–381(c) broadly defines "insured" to cover the named insured and "any person who uses, with the consent, express or implied, of the named insured, the motor vehicle ... and a guest in such motor vehicle to which the policy applies...." Kiernan qualifies as an insured.

**3.** The statute further provides: "Where such insured contracts for such higher limits, the endorsement therefor shall obligate the insurer to

*Id.* § 38.1–381(b) (Michie 1985 Cum.Supp.) (emphasis supplied). Section 38.1–381 thus mandates that every insurance policy, including those "written" by self-insurers, provide the same level of coverage for damages caused by an uninsured vehicle as is provided for damages caused by the insured, *i.e.,* liability coverage. As earlier noted, other provisions of Virginia insurance law mandate that the minimum liability coverage in every policy is $25,000 per person and $50,000 per occurrence. *Id.* § 46.1–1(8). Accordingly, if a policy contains the minimum liability coverage, then the uninsured coverage is $25,000/$50,000; and if liability coverage is more, say $100,000/$250,000, then the statute provides that the uninsured coverage must be the same.

In this case, there is no formal insurance policy to serve as a reference for "the limits of the liability insurance afforded by *such policy.*" Agency contends that the terms of the rental agreement should be construed as the relevant policy, and that it limits liability to "the minimum permissible by applicable state law," or $25,000. Consequently, Agency argues that even if it is obligated to offer underinsured motorist coverage under §§ 46.1–395(b)(2) and 38.1–381, it is required to provide no more than $25,000 in coverage.

We agree that "such policy" in this case is the rental agreement. In so holding we reject plaintiff's contention that Agency, as a self-insurer, may place no limit on its uninsured motorist coverage. Kiernan advocates an interpretation of Virginia's insurance law that would hold that because a self-insurer is not subject to the financial accountability requirements, which fall on all other drivers, then it takes upon itself all obligations for liability which may befall it—with no upper limit. This reading of Virginia insurance law would deny to a self-insurer any ability to limit contractually its liability, and we are satisfied that this could not reflect legislative intent.

The provision in the rental agreement which provides coverage up to the statutory minimum is both reasonable and enforceable against the lessee. *See, e.g., Danner v. Hertz Corp.,* 584 F.Supp. 293, 300–02 (D.Del.1984) (using rental contract to set lessor's uninsured motorist coverage obligation to lessee). If a driver wants more coverage, she can purchase it. If she does not, then the statute sets both the minimum liability coverage and the concomitant level of uninsured motorist coverage. It is beyond question that if the driver of the car in which Kiernan was a passenger had been injured in the same accident, she would be limited to recover $25,000 from Agency. *See id.* We do not believe that Virginia law should be interpreted to put a passenger in better position.[4]

It is important to note that, contrary to Kiernan's implicit suggestion, Agency is in no better position by being a selfinsurer than if it had contracted for insurance coverage. Agency's hypothetical policy could provide that any drivers (and guests) of the rental car were covered for liability up to $25,000/$50,000, and that the policy also would cover up to $25,000 for damages caused by an uninsured motorist. If that were Agency's policy, then Kiernan could only collect $25,000—she would have no basis to go behind the policy and recover

make payment for bodily injury ... caused by the operation or use of an underinsured motor vehicle to the extent such vehicle is underinsured as defined in (c) below."

**4.** Kiernan suggests that it is not inequitable for her to be able to collect more from the car rental company than could the driver since the driver, not she, entered into the contract, and that she should not be held to the amount chosen by the driver. But that argument misses the point: Under Virginia law, guests in cars are always limited in their ability to collect damages caused by an uninsured motorist to that amount which is included in the liability por-

tion of the non-liable driver's policy, so long as it exceeds $25,000. The driver agreed that the limit of liability (and, by statute, uninsured motorist coverage) on the rental vehicle was $25,000. That is the amount chosen by the driver and, as in all accidents, that is the amount that the passenger-plaintiff must live with. *Cf. Guaranty Nat'l Ins. Co. v. Kemper Fin. Servs.,* 667 F.Supp. 714, 716–17 (D.Mont.1987) (terms of rental agreement used to define lessee's liability coverage). There is nothing unfair, or anomalous, in the operation of the coverage limits we find control here.

from Agency, which would have no liability under those circumstances. The result should be the same if Agency is self-insured. Agency limited its coverage on liability to $25,000 by provisions in the rental agreement; by statute that operated as a cap on the coverage for injury caused by an underinsured motorist.

### III

Accordingly, we affirm the district court's grant of defendant's Rule 12(b)(1) motion for lack of subject matter jurisdiction.

AFFIRMED.