# THE HARTFORD FIRE INSURANCE COMPANY, T/A TWIN CITY FIRE INSURANCE CO., ETC., ET AL.

v.

# ARLENE DAVIS, ET AL.

Record No. 921809

November 5, 1993

Present: All the Justices

*Robyn L. Neal (Philip J. Infantino; Pender & Coward*, on briefs), for appellants.

*David H. Moyer (Bashara & Hubbard*, on brief), for appellees Arlene Davis, Angela Davis and Francine Davis.

No brief or argument for appellees William Patrick Horn, a/k/a William Patrick Holman; James R. Braaswill and Allstate Insurance Company.

JUSTICE KEENAN delivered the opinion of the Court.

In this appeal involving automobile insurance coverage, we must determine whether the trial court erred in ruling that William Patrick Holman was a permissive user of Lossie Bell Kinsey's motor vehicle at the time it was damaged in an automobile accident.

Kinsey's vehicle was covered under an automobile insurance policy issued by the Hartford Fire Insurance Company (Hartford). The policy defines "persons insured" as, among others, "any . . . person using such automobile with the permission of the named insured, provided his actual use thereof is within the scope of such permission." After the accident in question, Hartford brought a declaratory judgment action, seeking a determination that Holman was not a permissive user of Kinsey's vehicle at the time of the accident.

The evidence at trial showed that Holman, a Norfolk automobile mechanic, had repaired Kinsey's vehicle on one or two occasions prior to the accident. He had performed this work at Kinsey's home. On March 15, 1989, Kinsey authorized Holman to take her car to

his friend's garage on Granby Street in order to do certain repair work there. This was the first time Holman had taken Kinsey's vehicle from her home.

Kinsey gave Holman permission to drive the vehicle for the purpose of fixing it. She did not place any limitation on where he could obtain repair parts, or where he could test drive the vehicle for purposes of repairing it. Since the vehicle appeared to be in need of extensive repair, Kinsey did not set a time limit on Holman's possession of the car. Further, Kinsey testified that she had said nothing to Holman regarding his personal use of the vehicle. She also testified that she believed that most of the repairs would take place at the garage on Granby Street.

The accident occurred at 11:10 p.m. on March 16, 1989. At that time, Holman was driving Angela, Arlene, and Francine Davis to their home in Chesapeake. Francine Davis testified that Holman had not been working on Kinsey's vehicle on the night of the accident. She also stated that, earlier in the evening, Holman had driven them to Kinsey's house and had shown them a car in her garage. Holman told the women that the car was his and stated that he had a remote control opener for Kinsey's garage.

Kinsey testified that she had never met Angela, Arlene, or Francine Davis before the accident. She also stated that she would not have permitted Holman to drive her vehicle for his personal use, and that she was shocked to learn that he had used her vehicle at night for that purpose. Francine Davis testified, however, that when she went to Kinsey's home on the day after the accident, Kinsey expressed no surprise or shock at the fact that Holman had been driving the three women in her vehicle.

Based on this evidence, the trial court held that Holman was a permissive user of Kinsey's vehicle and, therefore, that Kinsey's insurance policy provided coverage for any liability Holman incurred as a result of the accident. This appeal followed.

Hartford argues that the trial court erred in ruling that Holman was driving Kinsey's vehicle within the scope of permission granted. It contends that this case is controlled by *Hartford Accident & Indemnity Co. v. Peach*, 193 Va. 260, 68 S.E.2d 520 (1952), in which this Court held that a mechanic was not a permissive user under the vehicle owner's insurance policy, when the mechanic was driving the insured's vehicle on a personal mission while it was in his care for repairs.

In response, defendants argue that the evidence at trial was sufficient to support the trial court's finding of implied permissive use. They assert that the evidence demonstrated a prior relationship between Holman and Kinsey adequate to establish that Kinsey impliedly permitted Holman's use of her vehicle at the time of the accident. We disagree with defendants.

■ Initially, we note that the issue whether a named insured has permitted another to use her vehicle is generally a question of fact. *Virginia Farm Bureau Mut. Ins. Co. v. Appalachian Power Co.*, 228 Va. 72, 78, 321 S.E.2d 84, 87 (1984). Thus, the trier of fact's resolution of this issue will not be disturbed on appeal unless it is plainly wrong or without evidence to support it. *Carter v. Carter*, 223 Va. 505, 508-09, 291 S.E.2d 218, 220 (1982). In conducting this review, we consider the evidence in the light most favorable to defendants, the parties prevailing below. Code § 8.01-680; *Furrow v. State Farm Mut. Auto. Ins. Co.*, 237 Va. 77, 79, 375 S.E.2d 738, 739 (1989).

■ Virginia Code § 38.2-2204, the omnibus-clause statute, requires that an automobile insurance policy provide coverage for a person who is "using" a motor vehicle "with the expressed or implied consent of the named insured." Implied permission may arise from a course of conduct between the parties. *Hartford Accident & Indem. Co. v. Peach*, 193 Va. at 266, 68 S.E.2d at 523. Further, the burden of proof is on the party seeking to bring himself within the omnibus-coverage clause of the policy. *Id.* at 264-65, 68 S.E.2d at 522.

■ Since Code § 38.2-2204 is remedial, it must be interpreted liberally in construing clauses such as the one at issue here. *State Farm Mut. Auto. Ins. Co. v. Geico Indem. Co.*, 241 Va. 326, 329-30, 402 S.E.2d 21, 22 (1991). Nevertheless, this Court has rejected the expansive interpretation of courts in some other states that express permission to use a vehicle for one purpose implies permission for all other purposes. *Id.*; *State Farm Mut. Auto. Ins. Co. v. Cook*, 186 Va. 658, 665, 43 S.E.2d 863, 866 (1947).

In considering whether the evidence before us is sufficient to support the trial court's finding of permissive use, we are guided by *Peach*, a case involving facts remarkably similar to those before us. There, the insured had accepted the offer of a co-worker, who was a mechanic, to repair his vehicle. The mechanic did not have his own repair shop, and there was no express understanding between the

parties regarding when the work was to be done or where any necessary parts would be procured. 193 Va. at 263, 68 S.E.2d at 521-22.

The mechanic did not request use of the car for personal purposes, nor did the vehicle owner grant such permission. Nothing was said by either party concerning whether the mechanic would drive the vehicle. Further, the parties had no prior course of dealing involving use of the vehicle. *Id.* at 262, 68 S.E.2d at 521.

The accident in *Peach* occurred at about 11:00 p.m. The record did not disclose the purpose of the trip but it did show that, at the time of the accident, the mechanic had done no work on the car and had not purchased any repair parts for it. In addition, he was intoxicated when the collision occurred. *Id.* at 263, 68 S.E.2d at 522.

Finding this evidence insufficient to establish implied permissive use, this Court emphasized the fact that there was no evidence showing that the purpose of the trip was related to the repair of the vehicle, or that any work on the vehicle had been attempted at the time of the accident. Thus, the Court concluded that, as a matter of law, the mechanic had failed to meet his burden of proving implied permissive use. *Id.*

Like the mechanic in *Peach*, Holman did not request, nor was he given, any permission to drive the vehicle for his personal use. Further, he and Kinsey had had no prior course of dealing with one another from which such permission could be inferred. There was also no evidence indicating that Holman's trip to Chesapeake was related in any way to the repair of Kinsey's vehicle, or that Holman had made any repairs to the vehicle prior to the accident. Instead, there was affirmative evidence showing that he had performed no work on the car that night.

From this record, we hold that the evidence is insufficient, as a matter of law, to support the trial court's ruling that Holman had implied permission to use Kinsey's vehicle at the time of the accident. As this Court explained in *Peach*, to allow recovery based on such limited evidence would be tantamount to saying that when the owner of a motor vehicle places it in the hands of a mechanic for repairs, and fails to place any restriction on the mechanic's use of the vehicle, the owner impliedly consents to the mechanic's use of the vehicle for a personal mission. *Id.* at 267, 68 S.E.2d at 524. We specifically rejected such a result in that case and again reject it here.

We also disagree with defendants' contention that other decisions of this Court compel a finding of permissive use here. Rather,

the cases on which defendants rely depend upon substantial evidence of a prior course of conduct between the parties, giving rise to an inference of implied permission for personal use. For example, in *Liberty Mutual Insurance Co. v. Tiller*, 189 Va. 544, 53 S.E.2d 814 (1949), an employee had been given exclusive control of his employer's truck. His employer had instructed him to take the truck home each night. Prior to the accident at issue, the employee had used the truck during evening hours for personal errands and for recreational driving on Sundays. Further, there was some evidence that the employer had told the employee to use the vehicle as if it were his own. *Id.* at 547-48, 53 S.E.2d at 815-16.

Similarly, in *State Farm Mutual Automobile Insurance Co. v. Cook, supra*, an employer had his employee take a truck home with him from work each night and return it to the job site each morning. The accident at issue occurred while the employee was returning home from a personal mission. Although there was no evidence indicating that the employer specifically had authorized the employee to use the vehicle for any personal mission, this Court held that implied permission for personal use could be inferred from these circumstances. 186 Va. at 667-68, 43 S.E.2d at 867.

Finally, in *Robinson v. Fidelity & Casualty Co.*, 190 Va. 368, 57 S.E.2d 93 (1950), the insured had given his girlfriend general authority to use and operate his vehicle while he was away on military duty. The girlfriend later developed a close relationship with another man, and occasionally asked him to assist her in transporting the car for repair work. Finding that the girlfriend's general authority to use the vehicle placed her in the shoes of the vehicle's owner, this Court concluded that the evidence supported a finding that the new boyfriend had permission to deviate a few miles off the course of an errand he was performing for her. *Id.* at 373, 57 S.E.2d at 95. Unlike all three of the above cases, in which there was evidence of an ongoing relationship between the parties that included more than one instance of permissive use, the case before us involved a single occasion when Holman was authorized to drive the car away from its usual location.

We also find no merit in defendants' contention that Holman's claim of ownership of a car in Kinsey's garage could give rise to an inference he had left a car for Kinsey to use, in return for her giving him permission to use her car. Without more, such an inference is not supported by the evidence.

For these reasons, we will reverse the trial court's judgment and enter final judgment in favor of Hartford.

*Reversed and final judgment.*