PRESENT: All the Justices

LENNA JO DYER

v.  Record No. 031532

OPINION BY
JUSTICE G. STEVEN AGEE
APRIL 23, 2004

DAIRYLAND INSURANCE COMPANY

FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Herbert C. Gill, Jr., Judge

In this appeal we determine whether the plaintiff's recovery for the negligence of one tortfeasor under the liability provision of an automobile insurance policy precludes recovery under the underinsured motorist provision of the same policy for the negligence of a joint tortfeasor.

I. BACKGROUND AND PROCEEDINGS BELOW

Lenna Jo Dyer ("Dyer") was the passenger on a motorcycle owned and operated by Kerry B. Atkinson ("Atkinson"). Atkinson's motorcycle was involved in a collision with a motorcycle owned and operated by Ricky M. Roberts ("Roberts"). As a result of the collision, Dyer received injuries and suffered damages in excess of $100,000. Atkinson and Roberts were jointly and concurrently negligent and their negligence was the proximate cause of the collision.

Dairyland Insurance Company ("Dairyland") insured the Atkinson motorcycle under a policy providing bodily injury liability coverage in the amount of $100,000 per claimant and

uninsured/underinsured motorist ("UM" or "UIM" respectively) coverage of $100,000 per claimant. Under the Atkinson policy, Dairyland tendered to Dyer the full $100,000 of bodily injury liability coverage based on Atkinson's liability. Dairyland also insured the Roberts motorcycle under a policy providing $25,000 of bodily injury liability coverage per claimant and UM/UIM coverages in the same amount. Dairyland tendered the full $25,000 of bodily injury liability coverage to Dyer based on Roberts' liability under his policy.

Dyer obtained a judgment against Roberts in the amount of $275,000. She then argued in the trial court that she was entitled to $75,000 in UIM coverage under the Atkinson policy. Dyer averred Roberts was underinsured in an amount equal to the difference between his $25,000 of bodily injury liability coverage and the $100,000 of UIM coverage under the Atkinson policy. Dairyland responded that it was not obligated to provide Dyer with UIM coverage under the Atkinson policy because it had already tendered the full amount of the bodily injury liability coverage under that policy. On cross-motions for summary judgment the trial court held that Dairyland was not obligated to provide UIM coverage to Dyer under the Atkinson policy. We awarded Dyer this appeal.

2

## II. ANALYSIS

Code § 38.2-2206(A) requires an insurer under a motor vehicle liability policy "to make payment for bodily injury . . . caused by the operation or use of an underinsured motor vehicle to the extent the vehicle is underinsured, as defined in subsection B." Under that subsection:

> A motor vehicle is "underinsured" when, and to the extent that, the total amount of bodily injury and property damage coverage applicable to the operation or use of the motor vehicle and available for payment for such bodily injury or property damage . . . is less than the total amount of uninsured motorist coverage afforded any person injured as a result of the operation or use of the vehicle.

Dyer argues she is underinsured under the Atkinson policy as to the Roberts vehicle within the meaning of Code § 38.2-2206(B). She further contends the resolution of this case is governed by this Court's decision in Nationwide Mutual Ins. v. Hill, 247 Va. 78, 439 S.E.2d 335 (1994). We agree with Dyer.

In Hill, Rebecca H. Henley ("Henley"), a passenger in a vehicle driven by Mary Ann Forsyth ("Forsyth"), died in an automobile accident involving another vehicle driven by Martin W. Jones ("Jones"). Henley's estate obtained judgment in the amount of $1,000,000, jointly and severally, against Forsyth's estate and Jones. 247 Va. at 80-81, 439 S.E.2d at 336.

The Forsyth vehicle was insured under an automobile liability policy issued by Nationwide Mutual Insurance Company

3

("Nationwide") which provided $50,000 of bodily injury liability coverage per claimant and UM/UIM coverage of the same amount. Jones was uninsured. Nationwide paid the full $50,000 of its bodily injury liability to the Henley estate based on Forsyth's negligence, but denied UM coverage attributable to Jones' negligence. Id. at 81, 439 S.E.2d at 336.

The administrator of Henley's estate then filed a declaratory judgment action asking for a determination that Henley was insured under the UM provision of the Nationwide policy because Jones was an uninsured motorist. Nationwide argued that the provisions in its UM endorsement required a set-off of any payments received from the bodily injury liability coverage against any recovery payable under the UM coverage. Id. at 83, 439 S.E.2d at 338. We approved the trial court's determination that the set-off provisions of the Nationwide UM endorsement violated Code § 38.2-2206 and were contrary to public policy. Nationwide was liable for payment of the full policy amount as to each tortfeasor: $50,000 of bodily injury liability coverage attributable to Forsyth and $50,000 of UM coverage attributable to Jones. Id. at 86, 439 S.E.2d at 339.

Dairyland asserts on appeal that the outcome of this case is not governed by Hill, but instead by two more recent cases, Superior Insurance Co. v. Hunter, 258 Va. 338, 520 S.E.2d 646 (1999) and Kramer v. Commonwealth, 263 Va. 128, 556 S.E.2d 761

4

(2002).  Dairyland avers these later cases bar Dyer from recovering under both the bodily injury liability and UIM provisions of the Atkinson policy.  We disagree.

The issue in Hunter was whether the UIM "provision of a tortfeasor's automobile liability insurance policy is available to satisfy claims of passengers in the tortfeasor's vehicle who are insured under the same policy and whose claims for damages exceed the limits of the policy's liability coverage."  Hunter, 258 Va. at 340, 520 S.E.2d at 647.  We concluded that the General Assembly, by virtue of Code § 38.2-2206, "did not intend that a vehicle could be 'underinsured' with respect to itself." Id. at 344, 520 S.E.2d at 649.  Accordingly, the plaintiff in Hunter had no claim to UIM coverage where the full bodily injury liability coverage limit had been paid and there was only one tortfeasor and one insurance policy.[*]

Likewise, Kramer involved a state employee killed by an uninsured driver.  The Commonwealth's Risk Management Plan only provided $25,000 in UM coverage but allowed for $50,000 of UIM coverage.  The decedent's estate sought to combine and collect both the UM and UIM coverages.  We reiterated the principle expressed in Hunter that the Commonwealth's Risk Management Plan

---

[*] Some language in Hunter could be read to limit recovery under both the bodily injury liability coverage and UIM provisions of a single policy; however, that language must be read in the context of a claim with one policy and one tortfeasor.

5

could not "be underinsured with respect to itself in order to provide additional coverage." Kramer, 263 Va. at 133, 556 S.E.2d at 763.

In contrast to Hunter and Kramer, the case at bar is the result of the joint negligence of two tortfeasors, Atkinson and Roberts, who were insured under separate policies. Under the plain terms of Code § 38.2-2206(B), the Roberts vehicle was underinsured because his policy's bodily injury liability coverage was "less than the total amount of uninsured motorist coverage [under the Atkinson policy] afforded any person [Dyer] injured as a result of the operation or use of the vehicle." Dyer's entitlement to the UIM coverage under the Atkinson policy does not mean the Atkinson motorcycle was underinsured as to itself. Instead, it means that Roberts, a joint and several tortfeasor, was underinsured and therefore Dyer is entitled to the UIM coverage under the Atkinson policy.

Hill is clear and commanding authority to apply the same rule in the UIM setting, where joint tortfeasors and multiple policies are present, as already applies to UM coverage. If we determined Hill was inapplicable to the case at bar, it would create the discrepant circumstance in which Dyer would be in a worse position than if Roberts had been uninsured. The General Assembly specifically eliminated this anomaly in the 1982 amendments to former Code §§ 38.1-381(b) and (c) which are now

6

Code §§ 38.2-2206(A) and (B). See Nationwide Mutual Insurance Company v. Scott, 234 Va. 573, 576, 363 S.E.2d 703, 704 (1988).

Dairyland also maintains that the Atkinson policy prohibits an insured from collecting both liability and UIM coverage. Because the policy was not entered into the record, we need not address Dairyland's argument in this regard. Moreover, such a provision would conflict with the requirements of Code §§ 38.2-2206(A) and (B) as we explained above. "The provisions of the statute [Code § 38.2-2206] are part of [the] contract of insurance, and we will not consider language in [a] policy that, arguably, is inconsistent with the statute as we have construed it." Id. at 577, 363 S.E.2d at 705.

## III. CONCLUSION

This Court's rationale in Hill applies with as equal force to UIM coverage as it does to UM coverage. We therefore hold that Dyer is entitled to UIM coverage under the Atkinson policy equal to the difference between Robert's coverage under his policy ($25,000) and the available UIM coverage under the Atkinson policy ($100,000), a total of $75,000. The trial court thus erred in granting summary judgment to Dairyland and in failing to grant summary judgment to Dyer. Accordingly, we will reverse the judgment of the trial court and enter final judgment for Dyer.

Reversed and final judgment.